1

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11   LLOYD ALBERT PAYNE,                    )   Case No.  1:13-cv-00313-LJO-BAM PC
                                            )
12                  Plaintiff,              )   FINDINGS AND RECOMMENDATIONS
                                            )   RECOMMENDING:
13          v.                              )
                                            )      (1)  PLAINTIFF'S MOTION FOR SUMMARY
14   S. BUTLER, A. GUTIERRES,               )           JUDGMENT BE DENIED (ECF No. 35)
                                            )
15                  Defendants.             )
                                            )
16                                          )      (2)  DEFENDANTS GUTIERREZ'S AND
                                            )           BUTLER'S MOTION FOR SUMMARY
17                                          )           JUDGMENT BE GRANTED (ECF No. 39)
                                            )
18                                          )   FOURTEEN (14) DAY DEADLINE
                                            )
19   _____)

20

21          Plaintiff Lloyd Albert Payne, a state prisoner proceeding pro se and in forma pauperis, filed

22   this civil rights action pursuant to 42 U.S.C. § 1983 on March 5, 2013.  This action proceeds on

23   Plaintiff's third amended complaint, filed on September 8, 2015, against Defendants Gutierrez

24   (erroneously sued as Gutierres) and Butler for deliberate indifference in violation of the Eighth

25   Amendment to the United States Constitution.

26          Cross motions for summary judgment are pending before the Court.  On October 13, 2015,

27   Plaintiff filed a motion for summary judgment.  (ECF No. (hereinafter "Doc.") 35.) Defendants filed

28   an opposition to the motion on October 23, 2016 indicating that Defendants required further

investigation.   The Court did not rule on Plaintiff's motion for summary judgment.  On July 28, 2016, Defendants Butler and Gutierrez ("Defendants") filed a motion for summary judgment.[1]  (Doc. 39.)  Defendants contend Defendants were not deliberately indifferent to Plaintiff's health, and did not subject him to cruel and unusual punishment in violation of Plaintiff's Eighth Amendment rights, for placing Plaintiff in a holding cell on June 6 and 7, 2012. Plaintiff filed an opposition to the motion on August 24, 2016.  (Doc. 40.)  Defendants filed their reply on August 31, 2016.  (Doc. 41.)  Thereafter, Plaintiff filed a document entitled "Exhibit" on September 14, 2016 (Doc. 42), which is a short surreply brief and contains a missing exhibit Plaintiff referred to in his opposition.  The motion for summary judgment has been submitted on the papers.  Local Rule 230(l).

## I.      Motion for Summary Judgment

### A.  Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Sec. Litig.*, 627

---

[1]  Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. *Woods v. Carey*, 684 F.3d 934, 939–41 (9th Cir.2012); *Rand v. Rowland*, 154 F.3d 952, 960–61 (9th Cir.1998). (Doc. 39-3.)

1   F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548

2   (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate

3   specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp.*, 627 F.3d at

4   387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere

5   existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

6   106 S.Ct. 2505 (1986)).

7          However, in judging the evidence at the summary judgment stage, the Court may not make

8   credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d

9   978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the

10  light most favorable to the non-moving party and determine whether a genuine issue of material fact

11  precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657

12  F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines only

13  whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings

14  because he is a pro se prisoner.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation

15  marks and citations omitted).

16         In arriving at these recommendations, the Court has carefully reviewed and considered all

17  arguments, points and authorities, declarations, exhibits, statements of undisputed facts, and other

18  papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not

19  to be construed to the effect that this Court did not consider the argument, document, paper, or

20  objection. This Court thoroughly reviewed and considered the evidence it deemed admissible,

21  material, and appropriate.

22              **B.  Summary of Plaintiff's Third Amended Complaint Allegations[2]**

23         This case arises out of an incident at Wasco State Prison, where Defendants Butler and Gutierrez

24  allegedly forced Plaintiff to stand for several hours in a holding cell on two consecutive nights, despite

25  Plaintiff's alleged medical restrictions that prohibit him from standing for periods longer than one hour.  In

---

[2] Plaintiff's third amended complaint is verified, and contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922–23 (9th Cir.2004).

his Third Amended Complaint ("TAC"), Plaintiff alleges that he informed all staff working in the kitchen that he could not stand due to chronic back pain.  Plaintiff alleges that notwithstanding chronic back pain, on June 6 and June 7, 2012, Defendants Butler and Gutierrez forced Plaintiff to stand in a cell for six hours and eight hours respectively on these two consecutive nights.

### C.  Undisputed and Disputed Material Facts

The facts listed below are verbatim from Defendants' Statement of Undisputed Facts ("SSUF"). (See Doc. 39-1, p.7-15.)  Plaintiff did not file a separate statement of facts, but instead addressed each listed fact as admitted or denied.  (See Plaintiff's Statement at Doc. 40, p. 5-8.) Plaintiff denies many of the Defendants' facts.[3]  The Court, however, finds that most of Defendants' facts are not material facts to a claim of deliberate indifference.  "[I]t is the substantive law's identification of what facts are critical and what facts are irrelevant that governs." *Anderson.*, 477 U.S. at 248, 106 S.Ct. at 2510 (only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment).  The Court sets out all of the facts so listed by Defendants and by Plaintiff in the interest of completeness.  The material facts, and the disputed material facts, are addressed in the "Discussion" section, *infra*.

1. Plaintiff was an inmate-worker in the Wasco State Prison "retherm kitchen" on June 6 and 7, 2012. (Doc. 39-5 hereinafter "Gutierrez Decl." ¶¶ 1, 2, 6.)

2. Defendant J. Gutierrez was the correctional officer supervising the inmate workers in the "retherm kitchen" on June 6 and 7, 2012, during first watch (10:00 p.m. – 6:00 a.m.). (Gutierrez Decl. ¶¶ 1, 2, 6; Doc. 39-4 (hereinafter "Butler Decl.") ¶ 2.)  As of July 8, 2013, Plaintiff was 42 years old. (Pl's Dep. 51:24-25.)

3. The "retherm kitchen" receives meals from the central kitchen and reheats them and prepares those meals for distribution to other parts of the prison. (Gutierrez Decl. ¶ 2; Butler Decl. ¶ 1.)

4. Gutierrez observed Plaintiff sitting on the floor and not working during his shift at one point on the evening of June 6, 2012. (Gutierrez Decl. ¶ 2.)

---

[3] Plaintiff also declines to admit or deny certain facts based on a lack of knowledge.  To the extent that Defendants' factual assertions are based on admissible evidence, Plaintiff has failed to raise any genuine dispute of these facts in each instance where he does not deny the fact.

4

5. All of the other inmates were on their feet and working, except for Plaintiff.  (Gutierrez Decl. ¶ 2.)

6. Gutierrez approached Plaintiff and asked him why he was not working. (Gutierrez Decl. ¶ 3.)

7. Plaintiff simply said "I refuse." (Gutierrez Decl. ¶ 3.)

8. Gutierrez counseled Plaintiff to return to work to no avail. (Gutierrez Decl. ¶ 3.)

9. Gutierrez ordered Plaintiff to stand up and turn around so that he could place him in handcuffs. (Gutierrez Decl. ¶ 3.)

10. Gutierrez did this because Plaintiff's refusal to return to work was disrupting the operation of the retherm kitchen where other inmates and non-custody staff were preparing the next day's meals for the inmate population. (Gutierrez Decl. ¶ 3.)

11. It was Gutierrez's intention to place Plaintiff in handcuffs so that Plaintiff could be escorted to the Sergeant for further counseling and appropriate action. (Gutierrez Decl. ¶ 3.)

12. Instead, Plaintiff stood up and walked away from Gutierrez, ignoring Gutierrez's order to submit to being handcuffed. (Gutierrez Decl. ¶ 3.)

13. Gutierrez told Plaintiff to comply with his orders or else Gutierrez would activate his alarm and utilize his O.C. pepper spray. (Gutierrez Decl. ¶ 3.)

14. Plaintiff stopped and complied with Gutierrez's orders. (Gutierrez Decl. ¶ 4.)

15. Gutierrez placed Plaintiff in handcuffs and notified Sergeant Butler of the situation via institutional radio. (Gutierrez Decl. ¶ 4, Butler Decl. ¶ 2.)

16. Gutierrez walked Plaintiff out of the kitchen and handed custody of Plaintiff over to Sergeant Butler and the escort team. (Gutierrez Decl. ¶ 4.)

17. Gutierrez walked with the escort team and Sergeant Butler to the Facility C Program Office holding cell, where Sergeant Butler instructed the escort team to place Plaintiff into the holding cell. (Gutierrez Decl. ¶ 4, Butler Decl. ¶ 3.)

18. Gutierrez told Sergeant Butler that Plaintiff was refusing to work. (Gutierrez Decl. ¶4, Butler Decl. ¶ 3.)

19. Sergeant Butler instructed Gutierrez to fill out a CDCR-115 Rules Violation Report for Plaintiff's refusal to work. (Gutierrez Decl. ¶ 4, Butler Decl. ¶ 4.)

5

20. Gutierrez returned to the kitchen and finished the remainder of his shift and had no more contact with Plaintiff for the remainder of the night. (Gutierrez Decl. ¶ 4, Butler Decl. ¶ 4.)

21. Gutierrez was not aware of any medical issue with Plaintiff's back on June 6, 2012, or any medical condition that prevented Plaintiff from being able to work or stand for prolonged periods of time. (Gutierrez Decl. ¶ 5.)

22. Gutierrez was not shown any doctor's order, or medical "chrono" that indicated that Plaintiff could not work or stand for prolonged periods of time as of June 6, 2012. (Gutierrez Decl. ¶ 5.)

23. Gutierrez was again working in the Wasco State Prison retherm kitchen during first watch (10:00 p.m. to 6:00 a.m.) the next night, June 7, 2012. (Gutierrez Decl. ¶ 6.)

24. Plaintiff was also working in the retherm kitchen again at that time. (Gutierrez Decl.¶ 6.)

25. Plaintiff approached Gutierrez and asked to speak to the Sergeant. (Gutierrez Decl. ¶6.)

26. Gutierrez asked Plaintiff why he wanted to speak to the Sergeant, to which he replied, "I refuse to work as long as you are here, you threatened me and I am in fear for my life. (Gutierrez Decl. ¶ 6.)

27. Gutierrez believed that Plaintiff was referring to the incident from the night before where Gutierrez threatened to use his pepper spray if Plaintiff did not comply with Gutierrez's orders. (Gutierrez Decl. ¶ 7.)
The claim at issue in this case is for deliberate indifference and threats or fear for safety do not raise issues of fact.

28. Gutierrez told Plaintiff that his actions were a result of Plaintiff's refusal to work and decision to disobey a direct order. (Gutierrez Decl. ¶ 7.)

29. Plaintiff became angry and shouted "I need to talk to the Sergeant now! I am in fear for my life." (Gutierrez Decl. ¶ 7.)

30. Plaintiff was agitated and aggressive at this point. (Gutierrez Decl. ¶ 8.)

31. It was Gutierrez's professional judgment that he needed to take control of the situation and again place handcuffs on Plaintiff. (Gutierrez Decl. ¶ 8.)

32. Gutierrez did this because Plaintiff's actions were again disrupting the orderly and efficient operation of the kitchen. (Gutierrez Decl. ¶ 8.)

33. Gutierrez believed that Plaintiff could likely become violent or incite the other inmates in the retherm kitchen to violence or disruption. (Gutierrez Decl. ¶ 8.)

34. Gutierrez therefore ordered Plaintiff to turn around, and Gutierrez placed Plaintiff in handcuffs. (Gutierrez Decl. ¶ 8.)

35. Gutierrez again contacted Sergeant Butler and informed him of what happened. (Gutierrez Decl. ¶ 8.)

36. Gutierrez escorted Plaintiff out of the retherm kitchen and transferred custody of Plaintiff over to the escort team. (Gutierrez Decl. ¶ 8.)

37. Gutierrez did not walk with Plaintiff and the escort team to the holding cell as he did the previous night. (Gutierrez Decl. ¶ 8.)

38. Gutierrez instead went back into the retherm kitchen for the remainder of his shift and had no more contact with Plaintiff for the rest of the night. (Gutierrez Decl. ¶ 8.)

39. Gutierrez never made Plaintiff work or stand for long periods of time, despite doctor's orders to the contrary, on June 6 and 7, 2012. (Gutierrez Decl. ¶ 9.)

40. Neither Plaintiff nor any other inmate, non-custodial staff, nor custody staff ever informed Gutierrez that Plaintiff had a medical condition that prevented him from working and standing for long periods of time. (Gutierrez Decl. ¶ 9.)

41. Neither Plaintiff nor anyone else ever showed Gutierrez a doctor's note or order (called a "chrono" within CDCR) stating that Plaintiff could not work or stand for long periods of time. (Gutierrez Decl. ¶ 9.)

42. Gutierrez never forced Plaintiff to work, because Plaintiff refused Gutierrez's orders and counseling efforts to return to work. (Gutierrez Decl. ¶ 9.)

43. Gutierrez did not force Plaintiff to stand for long periods of time in the holding cell on June 6 and 7, 2012, because Gutierrez did not put Plaintiff in the holding cell, he did not order that Plaintiff be put in the cell, and Gutierrez left Plaintiff in the custody of the escort team and Sergeant Butler and returned to the retherm kitchen on those nights. (Gutierrez Decl. ¶ 10.)

7

44. Gutierrez had no authority to release Plaintiff from the holding cell after Plaintiff was placed there because Sergeant Butler was handling the situation to determine the proper course of action. (Gutierrez Decl. ¶ 10.)

45. Plaintiff did not have to stand in the holding cell when he was placed there. (Gutierrez Decl. ¶ 10, Butler Decl. ¶ 12.)

46. Although the holding cell in which Plaintiff was placed did not have a built-in seat, Plaintiff could have simply sat down on the floor of the holding cell. (Gutierrez Decl. ¶ 10, Butler Decl. ¶ 12.)

47. Defendants Gutierrez and Butler have personally seen inmates sit on the floor of the holding cell, and it is common for inmates to do so in all holding cells until custody staff can attend to the inmate. (Gutierrez Decl. ¶ 10, Butler Decl. ¶ 12.)

48. Defendant Butler was the Correctional Sergeant supervising the running of Facility C and the retherm kitchen at Wasco State Prison on the evening of June 6 and 7, 2012. (Butler  Decl. ¶¶ 1, 2.)

49. Butler received a call from Correctional Officer Gutierrez over the institutional radio at approximately 10:45 p.m. on June 6, 2012. (Butler Decl. ¶ 2.)

50. Gutierrez informed Butler over institutional radio that he had an inmate in handcuffs in retherm kitchen. (Butler Decl. ¶ 2.)

51. Butler sent an escort team to the Retherm Kitchen to assist Gutierrez. (Butler Decl. ¶ 2.)

52. Gutierrez and the escort team returned to the area outside of the Program Office with Plaintiff in custody. (Butler Decl. ¶ 3.)

53. Plaintiff was placed in holding cell #4 at that time. (Butler Decl. ¶ 3 and Ex. A thereto.)

54. Gutierrez told Butler that Plaintiff was refusing to work and follow Correctional Officer Gutierrez's lawful orders. (Butler Decl. ¶ 3.)

55. Plaintiff's behavior was causing a disruption to the operation of the retherm kitchen. (Butler Decl. ¶ 3.)

56. Such disruptions can negatively impact the retherm kitchen's ability to prepare and serve meals to a large portion of the facility. (Butler Decl. ¶ 3.)

57. This would then have a negative ripple effect on staff and inmates if the retherm kitchen was unable to properly feed the inmates. (Butler Decl. ¶ 3.)

58. Butler instructed Plaintiff to remove his clothing to conduct an unclothed body search for any possible contraband that Plaintiff might have had. (Butler Decl. ¶ 4.)

59. This is standard policy and procedure in such instances. (Butler Decl. ¶ 4.)

60. Butler also attempted to counsel Plaintiff, to which he responded with a negative attitude. (Butler Decl. ¶ 4.)

61. Butler told Plaintiff that his negative attitude was not productive and that he should be more mature. (Butler Decl. ¶ 5.)

62. Plaintiff was unresponsive. (Butler Decl. ¶ 5.)

63. Butler decided to review Plaintiff's file to gain a better understanding of Plaintiff. (Butler Decl. ¶ 5.)

64. Butler discovered that Plaintiff was convicted of attempted murder. (Butler Decl. ¶5.)

65. Butler did not see anything in Plaintiff's file indicating that Plaintiff could not work or stand for prolonged periods of time. (Butler Decl. ¶ 5.)

66. Butler returned to talk with Plaintiff, but Plaintiff continued to be argumentative and confrontational. (Butler Decl. ¶ 5.)

67. Butler asked if Plaintiff was acting this way because of his long sentence for attempted murder. (Butler Decl. ¶ 5.)

68. Plaintiff had nothing more to say to Butler. (Butler Decl. ¶ 5.)

69. Butler left because he had to attend to other matters. (Butler Decl. ¶ 5.)

70. Plaintiff could not be escorted to his housing unit at this time because the escort team was now diverted to a different area of the prison. (Butler Decl. ¶ 5.)

71. Plaintiff was removed from the holding cell at approximately 2:10 a.m. to use the restroom. (Butler Decl. ¶ 6.)

72. Butler intended that Plaintiff be returned to his cell on Facility A at this time; however, the escort team was still occupied with other matters, including assisting with the escort of inmates in the "Receiving and Release" area of the prison. (Butler Decl. ¶ 6.)

9

73. Receiving and Release is the office in the prison that processes inmates coming into, and being transferred out of, the prison. (Butler Decl. ¶ 6.)

74. There were no staff available to safely escort Plaintiff to his housing unit on Facility A until 3:30 a.m. because they were assisting with Receiving and Release. (Butler Decl. ¶ 6.)

75. Butler was not aware of any medical issue with Plaintiff's back on June 6, 2012, or any medical condition that prevented him from being able to work or stand for prolonged periods of time. (Butler Decl. ¶ 7.)

76. Butler was not shown any doctor's order, or medical "chrono" showing that Plaintiff could not work or stand for prolonged periods of time as of June 6, 2012. (Butler Decl. ¶ 7.)

77. Plaintiff was again escorted to the Program Office in handcuffs at approximately 10:15 p.m. on the evening of June 7, 2012. (Butler Decl. ¶ 8.)

78. Plaintiff was placed in holding cell #3. (Butler Decl. ¶ 8 and Ex. B thereto.)

79. Butler spoke with Officer Gutierrez again, and Gutierrez told Butler that Plaintiff was agitated and hostile, refused to work, and claimed that he felt threatened by Gutierrez's presence in the retherm kitchen. (Butler Decl. ¶ 8.)

80. Butler told Gutierrez to write a 115 Rules Violation Report on Plaintiff for refusing to work. (Butler Decl. ¶ 8.)

81. Butler spoke with Plaintiff and asked Plaintiff what was going on. (Butler Decl. ¶ 9.)

82. Plaintiff told Butler that he felt that his life was in danger because Gutierrez threatened to use his O.C. pepper spray the night before. (Butler Decl. ¶ 9.)

83. Butler told Plaintiff that Officer Gutierrez was acting within the scope of his authority to maintain lawful order and gain Plaintiff's compliance, and that the threat of O.C. spray was not a threat of lethal force. (Butler Decl. ¶ 9.)

84. Plaintiff disagreed and continued to claim that Officer Gutierrez put his life in danger. (Butler Decl. ¶ 9.)

85. Butler explained that the warning was to get Plaintiff to cuff up and that the warning worked. (Butler Decl. ¶ 9.)

10

86. Butler told Plaintiff to think about what Butler had told him and that Plaintiff would be taken back to his cell. (Butler Decl. ¶ 9.)

87. The escort team was unable to escort Plaintiff to his housing unit at that moment because they had to provide assistance in Receiving and Release. (Butler Decl. ¶ 9.)

88. Plaintiff was removed from the holding cell and allowed to use the restroom at approximately 1:45 a.m. that night. (Butler Decl. ¶ 10.)

89. Plaintiff was ultimately released from the holding cell at approximately 3:15 a.m. that night and escorted back to his housing unit. (Butler Decl. ¶ 10.)

90. Butler did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by making him work or stand for long periods of time, despite doctor's orders to the contrary on June 6 and 7, 2012. (Butler Decl. ¶¶ 11, 12.)

91. Neither Plaintiff nor any other inmate, non-custodial staff, nor custody staff ever informed Butler that Plaintiff had a medical condition that prevented him from working and standing for long periods of time. (Butler Decl. ¶ 11.)

92. Neither Plaintiff nor anyone else ever showed Butler a doctor's note or order (called a "chrono" within CDCR) stating that Plaintiff could not work or stand for long periods of time. (Butler Decl. ¶ 11.)

93. Butler never forced Plaintiff to work, because Plaintiff refused Officer Gutierrez's orders to work and Butler's efforts to get Plaintiff to comply. (Butler Decl. ¶ 11.)

94. Plaintiff remained in the holding cells on the evenings of June 6 and 7, 2012, for the amount of time he did because of staff unavailability, and not because Butler intended for Plaintiff to be uncomfortable or suffer pain. (Butler Decl. ¶¶ 6, 9, 12.)

95. Plaintiff was escorted back to his housing unit on those evenings as soon as an escort team was available to do so. (Butler Decl. ¶ 12.)

96. Plaintiff did not have a doctor's order stating that he could not stand or work for a prolonged period of time as of June 6 and 7, 2012. (Pl.'s Dep. at 11:21 – 23:19 and Exhibits –K thereto (Attached hereto as Ex. 1); Exhibit B to the Third Am. Compl., ECF No. 30 at p. 14 of 20.)

11

97. Plaintiff's prison records specifically stated that Plaintiff did not have any work restrictions or medical disabilities from 2009 to 2013. (Pl.'s Dep. at 11:21 – 23:19 and Exhibits B– K thereto (Attached hereto as Ex. 1).)

98. Plaintiff was not diagnosed with mild-to-moderate scoliosis of the back until September 14, 2012. (Pl.'s Dep. at 81:17 – 82:12 and Exhibit C to the Third Am. Compl., ECF No. 30 at p. 16 of 20.)

99. Plaintiff's doctor did not order any medical restrictions for Plaintiff in October of 2012 after Plaintiff was diagnosed with scoliosis. (Pl.'s Dep. at 22:20 – 23:19 and Exhibit K thereto (Attached hereto as Ex. 1).)

100.      Plaintiff's prison records did not contain a medical restriction precluding Plaintiff from standing for long periods of time until July 17, 2013. (Exhibit B to the Third Am. Compl., ECF No. 30 at p. 14 of 20.)

101.      The medical restriction in Plaintiff's July 17, 2013, form attached to the Third Amended Complaint was generated by a prison in Oklahoma. (Pl.'s Dep. at 80:16 – 81:5 and Exhibit B to the Third Am. Compl., ECF No. 30 at p. 14 of 20.)

## II.      Discussion

### A.  Eighth Amendment Deliberate Indifference

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. *Morgan*, 465 F.3d at 1045 (quotation marks and citations omitted); *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); *Rhodes*, 452 U.S. at 346

(To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. *See, e.g.*, *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). This requires the prisoner to demonstrate (1) the existence of an objectively serious risk of harm and (2) that, subjectively, prison officials knew of and disregarded that risk. See *Farmer*, 511 U.S. at 834, 847; *Thomas*, 611 F.3d at 1150-51; *Foster,* 554 F.3d at 812.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 522 U.S. at 834. In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. *Johnson*, 217 F.3d at 731.

The second prong of deliberate indifference focuses on the subjective intent of the prison official. Under this subjective prong, the prisoner must show that the prison official acted with "deliberate indifference" to excessive risk to the prisoner's health and safety. *Peralta v Dillard*, 744 F.3d 1076, 1082 (9th Cir.2014) (*en banc*) (citing *Farmer*, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. *Id.* (citing *Farmer*, 511 U.S. at 842); *see also Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1439 (9th Cir.1991). Such an act or omission requires a showing of the prison official's personal participation in the alleged rights deprivation. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691–92 (1978); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014).

### B.  Parties' Arguments

#### 1.  Defendants' Motion

Defendants argue that Plaintiff cannot establish the first prong of an Eighth Amendment violation that he had a serious medical condition.  (Doc. 39-1.) Plaintiff did not have a doctor's order precluding Plaintiff from standing, was not diagnosed until two months after the incidents, and did not have medication restrictions.  (SSUF 98-101)  Defendants argue that they were not required to accept at face value any claim Plaintiff may have that he was unable to stand because of a medical condition. Citing *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014), Defendants argue that they are not medical professionals and were not qualified to verify whether Plaintiff was suffering from a serious medical need.  They acted reasonably and are not required to believe Plaintiff's unsupported claim of a medical standing restriction.  They are entitled to rely upon medical staff's determination, or lack thereof, regarding Plaintiff's medical needs or condition.

As to the subjective prong, Defendant Gutierrez did not act wantonly or maliciously because Gutierrez did not place Plaintiff in the holding cell or have authority either to place Plaintiff in the holding cage or once inside the cell, to release Plaintiff.  (Doc. 39-1 p.14-15.) Defendant Butler, who ordered Plaintiff placed in the cell, did not know that Plaintiff suffered from a serious medical issue. Defendant Butler reviewed Plaintiff's file, and there was nothing in Plaintiff's central file showing Plaintiff had any medical restrictions and Plaintiff could sit in the cell.  Butler was not required to rely on Plaintiff's representations.  Further, Plaintiff remained in the holding cell each night because there was not enough staff to escort Plaintiff to his housing unit.  *Id.*

#### 2.  Plaintiff's Motion for Summary Judgment and Opposition to Defendants' Motion

Plaintiff's motion for summary judgment (Doc. 35) and his opposition to Defendant's motion (Doc. 40) present similar evidence and facts.  In both his motion and opposition, Plaintiff submits a declaration under penalty of perjury that he has a medical condition of scoliosis that causes extreme pain from prolonged standing, bending and heavy lifting.  He cannot stand for longer than an hour. Plaintiff told Defendant Gutierrez about his back hurting on the day when Gutierrez asked Plaintiff why he was sitting down and not working.  (Doc. 35, p. 2 of 5; Doc. 40, p.4.)  Plaintiff says he "was

14

very expressive about his pain" and that he was not refusing to work. (Doc. 40 p. 28.)  Plaintiff alleges that he continued to ask for accommodation at work from his supervisors and from medical.[4]  *Id.* Defendants refused to respond to his claims of back pain and refused to respond to his complaint and instead accused him of faking an injury to get out of work.  He states he complained to them of his back pain on the first night when he was standing in the cell and that he has scoliosis.  He states he was not in a larger cell and could not sit.  He states there was no legitimate reason for defendant to keep him in the cell for the length of time (6-8 hours), after hearing him complain of pain, and could have taken him to his housing unit.  (Doc. 40 p. 29.)  Instead, they held him in the cell until the kitchen workers were done with their shift and he was escorted back.  (Doc. 35, p. 3 of 5.)

In his opposition to Defendants' motion, Plaintiff states that he has documentation that he was diagnosed with a "back malady," citing to an Exh. 4 to his opposition.[5]  Plaintiff acknowledges that Defendants are "not required to accept at face value any claim I made that I was unable to stand because of a back malady."  (Doc. 40 p. 12.)  Plaintiff mentions in his opposition that there were prison documents, attached to his deposition, dating back between 2009 to 2012 stating that he was physically eligible for full duty work with no restrictions and that these documents are false and dishonest.  (Doc. 40 p. 12.)

### 3.  Defendants' Reply

Plaintiff fails to show that he had a medical condition that Defendants knew of when he was placed in the holding cell on the evenings of June 6 and 7, 2012, or evidence that Defendants disregarded an excessive risk of harm to Plaintiff's well-being. Defendants produced evidence that Plaintiff did not have any doctor's orders prohibiting him from standing in June 2012. Defendants also produced evidence that Plaintiff was not diagnosed with scoliosis until September 2012. (SSUF 39-42;

---

[4] The evidence does not show that Defendants Gutierrez or Butler were his supervisors.  The evidence indicates Defendants Gutierrez and Butler were not medical personnel.

[5] Plaintiff attaches two medical reports to his opposition.  Exhibit 2 is an Intake History and Physical Form dated April 20, 2016, four years after the incidents in this case.  (Doc. 40 p., 19.)  This intake history shows a history of "chronic pain– back."  The other medical form attached to the opposition is Exhibit "A" which is a "Comprehensive Accommodation Chrono" dated August 2013, more than a year after this incident.  (Doc. 40 p. 32.)  Exhibit A states that "physical limitation to Job Assignment" is "no prolonged standing >1 hr at a time."  Plaintiff's opposition refers to an Exhibit "4," and apparently, Plaintiff incorrectly labeled it as Exhibit A.  Exhibit A is the same as a later filed Exhibit 4. (Doc. 42, Exhibit.)

90-93; 96-99.)  Plaintiff did not have any medical restrictions until he was a prisoner in Oklahoma in July 2013, (SSUF 101). Defendants had no reasons to suspect that Plaintiff could not stand in the holding cell on June 6 or 7, 2012, and therefore were not deliberately indifferent in placing him in the holding cells.

### C.  Deliberate Indifference - Objectively Serious Medical Condition

Defendants argue that Plaintiff did not have an objectively serious medical need. It is undisputed that Plaintiff did not have medical restrictions listed in his file at the time of the incident. There is no evidence that prior to the June 6 and 7, 2012 incident, any documentation about Plaintiff's back pain was contained in his file or known to the officers.  Indeed, Plaintiff had been assigned to the kitchen as his prison job, which required standing.  There is no evidence that Plaintiff's condition of pain was observable such that the medical condition would be apparent to Defendants.  *See*, *e.g.*, *McGary v. Manglicmot*, No. 14-CV-04686-LB, 2016 WL 6024553, at *3 (N.D. Cal. Oct. 14, 2016) (documented  evidence in the record that Mr. McGary had severe and chronic lower-back pain that was of the sort for which the usual treatment included opiates.); *Kinney v. Brazelton*, No. 1:14-cv-00503-AWI-MJS (PC), 2016 WL 4417690, at *6 (E.D. Cal. Aug. 18, 2016) (objectively serious risk of harm where Plaintiff was allegedly forced to kneel for ninety minutes on pavement that was hot enough to cause blistering that endured for over two weeks); *Bacon v. Kumar*, No. 15-CV-04477-LB, 2016 WL 5076208, at *12 (N.D. Cal. Sept. 20, 2016) (documented evidence in the record showing that Mr. Bacon complained of pain related to his shoulder and ankle, earlier had received joint-replacement surgery on his shoulder, had twisted his ankle occasionally, and had x-rays indicating some degenerative changes to his shoulder and ankle suffice to permit a jury to find the existence of an objectively serious medical need.)

The Court, however, need not decide whether Plaintiff's complaints of pain meet the standards for an "objectively serious medical condition."  The case can be resolved by analysis of the subjective prong of deliberate indifference.

### D.  Deliberate Indifference Subjective Prong – Intent by Defendants

In the second prong of the deliberate indifference standard, the prison official must, subjectively, "know of and disregard an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at

837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

> <u>Defendant Gutierrez – Night of June 6, 2012</u>

Plaintiff contends that Defendant Gutierrez was deliberately indifferent to Plaintiff's pain on the night of June 6, 2012 by forcing Plaintiff to stand in a cell for hours.

Defendant Gutierrez did not participate in the conduct which caused Plaintiff pain. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation...."). On the night of June 6, 2012, Defendant Gutierrez believed Plaintiff was not working, cuffed Plaintiff, and escorted Plaintiff, with an escort team, to the Program C Office, where Defendant Sergeant Butler was located. Defendant Gutierrez walked with an escort team with Plaintiff from the kitchen to the Facility C Program holding cell.  (SSUF 16, 17; Doc. 40, p. 6 para 15-16.) Once in the Program C Office, Gutierrez relinquished custody to Sergeant Butler.  It is undisputed that Defendant Gutierrez was not responsible for placing Plaintiff in the cell and did not put Plaintiff in the holding cell.  In Plaintiff's deposition, Plaintiff admits that it was not Defendant Gutierrez who ordered Plaintiff placed into the holding cell.  (Depo p. 60:1-12.)

> Q:     Who ordered that you be put into the holding cage?
>
> A:     That was – it had to be done through the approval of Sergeant Butler.  Because Gutierrez can't just put me in there, without – I guess, going to his Sergeant.  I think that's the whole reason why he called him.

Therefore, the undisputed facts establish that Gutierrez not responsible for and did not place plaintiff into the holding cell.  The undisputed facts further establish that after Plaintiff was placed in the holding cell, Defendant Gutierrez returned to the kitchen. (Depo p. 60: 8-12.)

> Q:     And after you got put in the cage, did Gutierrez go back to his post?
>
> A:     If I remember, after about 20 minutes of being out there, they strip searched me and put me in there, then he went back.

17

1  It is also undisputed that Defendant Gutierrez had no further contact with Plaintiff on the evening of

2  June 6, 2012. [6]

3       Thus, there is no issue of material fact that Gutierrez did not know of and disregard a

4  substantial risk of serious harm to Plaintiff for standing in a holding cell.  Defendant Gutierrez did not

5  order or place Plaintiff in the cell, Gutierrez promptly returned to work in the kitchen, and then had no

6  more contact with Plaintiff. There is no evidence that Defendant Gutierrez knew anything further of

7  what happened to Plaintiff once Gutierrez turned Plaintiff over to Defendant Butler.  Plaintiff does not

8  bring forth any evidence that Defendant Gutierrez had authority to order Plaintiff released from the

9  cell once placed in the cell.  He does not bring forth any evidence that it was Gutierrez's responsibility

10 to follow-up on Plaintiff once placed in the cell.  Therefore, Plaintiff cannot show that Gutierrez

11 subjectively knew of the risk to Plaintiff for standing for a prolonged time in a holding cell, even if

12 Gutierrez knew of Plaintiff's pain, and disregarded that risk.  Defendant Gutierrez was not responsible

13 for the conduct which caused Plaintiff pain. Accordingly, Plaintiff has not raised a disputed issue of

14 material fact that Defendant Gutierrez was deliberately indifferent on the night of June 6, 2017.

15       <u>Defendant Gutierrez – Night of June 7, 2012</u>

16       On the night of June 7, 2012, Plaintiff alleges Gutierrez was again deliberately indifferent to

17 his pain when he placed Plaintiff in a holding cell for hours.  However, the undisputed evidence is that

18 Gutierrez, like the evening before, did not place Plaintiff in the cell.  The undisputed evidence is that

19 on June 7, 2012, Defendant Gutierrez called Defendant Butler about Plaintiff and Defendant Butler

20 came to the kitchen to talk with Plaintiff.  (Depo p. 72:4-10.)

21       Q:    Okay. And Gutierrez called Sergeant Butler on his radio; is that correct?

22       A:    Yes.

23       Q:    Did Sergeant Butler come into the kitchen?

24

25  [6] Plaintiff purportedly disputes this fact by citing to two deposition excerpts.  (See Doc. 40, p.6 para.17 (citing depo.
    P.61:21-25 and 62:1-16).)  Yet the deposition excerpts to which Plaintiff cite do not support any dispute of the fact that
26  Gutierrez went back to and had no further contact with Plaintiff.  The first excerpt is about how Plaintiff could not sit in the
    holding cage.  The second excerpt refers to the escort officers who returned Plaintiff to his cell.  But Gutierrez was not an
27  escort officer and it is undisputed that there was a separate escort team.  (See SSUF 16 in which Plaintiff admitted
    Gutierrez walked Plaintiff out of the kitchen and handed custody of Plaintiff over to Sergeant Butler and the escort team.)

28

A:      Right were that's door's at, where the carts come in, the door was open.  So when he

came in, he stepped to the door  . . .

Defendant Gutierrez did not escort Plaintiff to the holding cell on June 7, 2012.  Rather Plaintiff was

escorted by the same officers as the night before, and also by Sergeant Butler.  (Depo p. 74:19-75:1.)

Indeed, Gutierrez transferred custody of Plaintiff over to the escort team and did not walk Plaintiff and

escort team to holding cell as he did the night before.[7]  (Doc. 40 p. 6 para. 23-24; SSUF fact no. 36-

37.) Plaintiff admits that Gutierrez "went back to the retherm kitchen for the remainder of his shift and

had no more contact with Plaintiff for the rest of the night."  (Doc. 40, p. 5, para. 25; SSUF 38.)  The

undisputed evidence is that Gutierrez did not force Plaintiff to stand for long periods of time in the

holding cell on June 6 and 7, 2012, because Gutierrez did not put Plaintiff in the holding cell and was

in the kitchen area.  (Doc. 40, p. 7, para. 30; SSUF 43.)  Defendant Gutierrez did not order Plaintiff be

put in the cell; Gutierrez left Plaintiff in the custody of the escort team and Sergeant Butler and

returned to the retherm kitchen on both nights of June 6 and June 7.  (Doc. 40, p. 7, para. 30; SSUF

43.)  Further, it is undisputed that Gutierrez had no authority to release Plaintiff from the holding cell.

(Doc. 40, p. 7, para. 31; SSUF 44.)  Accordingly, there is no evidence from which a reasonable jury

could conclude that Defendant Gutierrez was deliberately indifferent to Plaintiff's pain in placing

Plaintiff in a holding cell for hours.

                    Defendant Butler – June 6 and 7

       It is undisputed that Defendant Sergeant Butler was supervising the retherm kitchen on the

evenings of June 6 and 7, 2012. (Doc. 40 p. 7 para.33; SSUF 48.) When Plaintiff was escorted from

the retherm kitchen to the Program C office, Plaintiff was placed in a holding cell for reportedly

refusing to work, on both nights.  (Doc. 40 p. 7 para. 34; SSUF para. 53-54.)  Defendant Butler

contends he was "not aware of any medical issue with Plaintiff's back" on June 6 or 7, 2012. Plaintiff,

---

[7] Plaintiff disputes that defendant Gutierrez was not with the escort team on the second night, June 7, 2012.  He states that "Gutierrez was with them.  It was his handcuffs I was in by his own admission after I was placed in the cage he took his cuffs back and then left after talking to his superiors."  (Doc. 40, p. 6-7, para. 24.)  Regardless, this dispute is immaterial. The material fact is that Gutierrez did not place Plaintiff in the holding cage on the second night, June 7, have any authority to do so or to release him from the holding cage. The undisputed evidence is that Gutierrez did not place Plaintiff in the holding cage, Gutierrez returned back to the kitchen, and had no further contact with Plaintiff.  (Doc. 40, p. 5, para. 25; SSUF 38.)

however, presents evidence that he informed Defendant Butler of his back pain. (TAC, Doc. 30, p. 5:23-p. 6:9; Motion for Summary Judgment, Doc. 35 p. 4 of 5.)  The TAC states:

> "Why dont you want to work" Sgt Butler asked Plaintiff.  "I was not refusing to work. I have back problems and my back hurts I can't stand for no longer than an hour.  You can call medical and they'll tell you."  Plaintiff answered.  "There's only one nurse that works at night and she going around the yards so there's no way for me to find out so you'll have to stand in the cage until 4:30a.m. kitchen workers release and you can go back to the yard with the rest of the kitchen workers." (TAC, Doc. 30, p. 5:23-p. 6:9.)

Butler states that neither Plaintiff nor anyone else informed him that Plaintiff had a medical condition that prevented him from working and standing for long periods of time.  (Doc. 40, p. 8 para. 50; SSUF para. 91.)  Plaintiff, however, presents the above evidence that he told Defendant Butler about his pain and limitations.

Nonetheless, it is undisputed that Defendant Butler then reviewed Plaintiff's file "to get a better understanding of Plaintiff" and "did not see anything in Plaintiff's file indicating that Plaintiff could not work or stand for prolonged periods of time."  (Doc. 40 p. 7 para.39; SSUF 63-65.) Plaintiff admits also that he had no documented work or standing restrictions at the time. Plaintiff did not have a doctor's order stating that he could not stand or work for a prolonged period of time as of June 6 and 7, 2012.  (Doc. 40 p. 8 para 53; SSUF para 96.)  Plaintiff also admits that his prison records specifically stated that Plaintiff did not have any work restrictions or medical disabilities from 2009 to 2013. (Doc. 40 p. 8 para 53; SSUF para 97.)  Thus, the documented file available and reviewed by Defendant Butler showed no restrictions or standing limitations.  Defendant Butler's review of the file demonstrates that he did not subjectively know of the risk to Plaintiff for standing for a prolonged time in a holding cell.

The undisputed evidence also is that it is possible to sit in the holding cell.  Defendant Butler presents undisputed evidence that he has seen other inmates sitting within the holding cell and it is common for inmates to do so. (SSUF  47, 46.)  Thus, the undisputed evidence establishes that to Defendant Butler's knowledge an inmate could sit in the holding cell.

Plaintiff disputes that he was able to sit in the holding cell.  Nonetheless, whether Plaintiff could actually sit in the cell is not a material fact.  While Plaintiff states he told Defendant Butler that he was not able to stand in the cell due to his back pain, there is no evidence that Plaintiff told

Defendant Butler that Plaintiff was unable <u>to sit</u>. Plaintiff merely told Defendant Butler that he was unable <u>to stand</u>.[8]   The evidence also establishes that Plaintiff has the ability to sit, because he was sitting on the floor on June 6, 2012 when Defendant Gutierrez approached Plaintiff about not working. (Depo. P. 42:10-14.) Thus, there is no evidence that Defendant Butler knew Plaintiff's medical condition made it painful for Plaintiff to sit in the holding cell. To be liable, a prison official must not only "'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  Here, there is no evidence that Defendant Butler drew the inference that Plaintiff would be unable to sit in the holding cell due to purported back pain.

<u>Duration of Confinement in the Holding Cell</u>

On each of the two nights, Plaintiff stood in the holding cell, and was in the cell for six hours and eight hours respectively on the two consecutive nights.

While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. *Morgan*, 465 F.3d at 1045 (quotation marks and citations omitted).

The duration of the confinement in the holding cell does not create a material issue of fact for deliberate indifference against Defendant Butler.  There was a legitimate penological purpose for placing Plaintiff in the cell because he reportedly refused to work.  As discussed above, Defendant Butler was not aware of facts from which an inference could be drawn that substantial risk of harm

---

[8] Plaintiff states that he could not bend his body to fit in a sitting position in the holding cage.  (Doc. 40 p. 28, para. 7.) Plaintiff does not present any evidence that he told Defendant Butler at any time that he was unable to sit in the holding cage due to pain in his back.  Further, Plaintiff does not present evidence that it is not possible for other inmates to sit in a holding cage, and therefore the fact that Defendant Butler saw other inmates sit and believed it to be possible to sit in the holding cage remains undisputed.

existed to Plaintiff.  Butler knew that inmates could sit inside the holding cells because he had seen inmates do so.  Butler was unaware that Plaintiff could not sit in the holding cell because Plaintiff did not tell him that sitting in the cell would be painful to Plaintiff.  Further, Butler reviewed Plaintiff's file and learned there was no medical restriction in his file precluding Plaintiff from standing for any duration.  Accordingly, the duration of confinement does not raise a material issue of fact that Defendant Butler knew of risk of harm to Plaintiff and disregarded it.

**IV.    Conclusion and Recommendation**

For the reasons discussed above, the Court HEREBY RECOMMENDS as follows:

1.  Plaintiff's motion for summary judgment, filed on October 13, 2015, be DENIED;

2.  Defendants' motion for summary judgment, filed on July 28, 2016, be GRANTED;

3.  Summary judgment be GRANTED in favor of Defendants Gutierrez and Butler and against Plaintiff; and

4.  Judgment be entered accordingly.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. §636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 2, 2017**            /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE

22